2001 UT 33

**STATE of Utah, Plaintiff and Appellee,**

v.

**Flint Wayne HARRISON, Defendant and Appellant.**

**No. 990773.**

Supreme Court of Utah.

April 13, 2001.

Rehearing Denied May 16, 2001.

939

Mark L. Shurtleff, Att'y Gen., and Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Aric Cramer and Amy L. Clayton, Bountiful, for defendant.

WILKINS, Justice:

¶ 1 A jury found defendant Flint Wayne Harrison guilty of first degree rape and second degree forcible sexual abuse, violations of sections 76–5–402 and 76–5–404 of the Utah Code. Defendant appeals, arguing that procedures that occurred at trial deprived him of his constitutional right to a fair trial. We reverse and remand for a new trial.

## BACKGROUND[1]

¶ 2 Defendant and the victim, A.G., both attended a party. The victim, a seventeen-year-old girl, testified that she became intoxicated at the party and passed out on the bathroom floor where she was raped by defendant. Defendant admitted that he and the victim engaged in sexual intercourse, but he insisted that the victim consented.

¶ 3 Prior to trial, the trial court appointed a guardian ad litem to represent the victim because she was a minor. During the trial, the court also permitted a victim's advocate to sit near the victim while she testified. In addition, the court permitted the guardian ad litem to sit at counsel table with the prosecutor, to question witnesses, and to make objections during the trial. In particular, the court permitted the guardian ad litem to ask follow-up questions of the State's witnesses, to object to defense counsel's questions on cross-examination, and to follow-up on the cross-examination of an expert witness called by defendant. However, the court expressly refused to permit the guardian ad litem to give an opening statement or closing argument. On one occasion, defense counsel objected to a question by the guardian ad litem of an expert witness, and the trial court sustained the objection, but the trial court did not instruct the jury to disregard the guardian ad litem's question.

¶ 4 The jury found defendant guilty of first degree felony rape and second degree forcible sexual abuse.

1. On appeal, we recite the facts from the record in the light most favorable to the jury's verdict. *E.g., State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346.

2. Defendant suggests and attempts to rebut the notion that the practice of allowing a support

## ANALYSIS

¶ 5 The crux of defendant's claim on appeal is that his constitutional right to a fair and impartial trial was violated because the trial court permitted the victim's advocate to sit near the victim while she testified, permitted the guardian ad litem to sit at counsel table with the State and to question witnesses, and failed to issue a curative instruction regarding the guardian ad litem's alleged improper question. Defendant further contends that if these errors standing alone did not deprive him of his right to a fair trial, the cumulative effect of the errors did.

¶ 6 The trial judge has broad latitude to control and manage the proceedings and preserve the integrity of the trial process. *State v. Parsons*, 781 P.2d 1275, 1282 (Utah 1989). However, when a courtroom action or arrangement is challenged as inherently prejudicial, as it is here, we consider whether the practice presents an unacceptable risk of bringing into play impermissible factors which might erode the presumption of innocence. *See Holbrook v. Flynn*, 475 U.S. 560, 570, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986); *Estelle v. Williams*, 425 U.S. 501, 505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). If the challenged practice is not inherently prejudicial, or the defendant fails to show actual prejudice, the judgment of the trial court will be affirmed. *Holbrook*, 475 U.S. at 572, 106 S.Ct. 1340.

### I. THE VICTIM'S ADVOCATE

¶ 7 It is established law in Utah that a witness of tender years may be accompanied by an adult to ease the emotional turmoil of testifying in court. *See State v. Keeley*, 8 Utah 2d 70, 71–72, 328 P.2d 724, 725 (1958). This practice is one legitimately within the trial court's inherent powers. Neither party has identified, nor do we find express authority for or limitation of, this practice either in statute or in court rule.[2]

person to accompany a child witness or victim when testifying may arise from section 77–37–1(2) of the Victims' Rights Act. *See* Utah Code Ann. § 77–37–1 to –5 (1999 & Supp.2000). We find no provision in the Victims' Rights Act that applies to assistance in testifying at trial.

¶ 8 In this case, the victim was within a month of her eighteenth birthday at the time of trial. The prosecutor asked the trial court for permission to have the victim's advocate sit near A.G. at the time of her testimony to give her a sense of comfort. Defendant objected, arguing that A.G.'s birthday was only two weeks away, that there had been no showing of necessity for the presence of the victim's advocate, and that the requested arrangement presented the possibility of "non-verbal communication" between the advocate and the victim. In response, the prosecutor said that he had talked with A.G. and that she did not "particularly care either way" about having the victim's advocate sit near her during her testimony.

¶ 9 The trial court overruled defendant's objection, because it determined that it was common practice to have a victim's advocate sit with a minor called to testify "if they choose," so long as the adult did not prompt testimony in any way. The trial court further indicated that because of the physical arrangement of the courtroom, any inappropriate behavior by the victim's advocate would be obvious to the court, and would be dealt with appropriately. Consequently, the trial court exercised its inherent powers to control and manage the trial process and allowed the victim's advocate to sit near A.G. as she testified.

¶ 10 Defendant now argues that the very presence of the victim's advocate creates an improper and impermissible suggestion to the jury that A.G.'s testimony was more truthful than it would otherwise have been perceived by the jury without the victim's advocate present. However, defendant alleges no inappropriate behavior by the victim's advocate during A.G.'s testimony, nor is any revealed by our review of the trial record. As a result, we find no error in permitting the victim's advocate to sit near A.G. during her testimony. The practice of allowing a victim's advocate to accompany and sit near a minor victim during trial testimony is not inherently prejudicial to defendant, and defendant has made no showing of actual prejudice.

¶ 11 However, where A.G. apparently did not particularly care about having the victim's advocate nearby, and where A.G. was within two weeks of majority, the presence of the victim's advocate appears to have served little purpose. Although permitting the victim's advocate to sit nearby was clearly within the broad discretion afforded the trial court in managing the proceedings, any presumption that allowing such an advocate to accompany A.G. under these circumstances was *required* would be in error. The trial court just as easily could have denied the request of the prosecutor under these circumstances without committing error.

¶ 12 Clearly, the need for a victim's advocate or other support person to accompany a witness while testifying decreases with the increasing maturity of the witness. However, absent a showing of prejudice, the matter is one best left to the sound discretion of the trial court after taking into consideration the age, maturity, emotional stability, and rigors facing a particular child witness, among other factors. These must be weighed against any appearance of inappropriate bolstering of the testimony by the presence of the support person, and any likelihood of interference with the testimony. While A.G. may not have been a witness of "tender years" entitled to, or needing, the support of another nearby while testifying, the record discloses no factors other than her chronological age upon which we may independently review the propriety of the court's decision. As such, we defer to the trial court, assuming other factors were evident upon which it relied. We decline defendant's invitation to say that being nearly eighteen years old excludes A.G. from this category as a matter of law.

## II. EXTENT OF TRIAL PARTICIPATION OF THE GUARDIAN AD LITEM

¶ 13 The defendant next claims that the extent of the guardian ad litem's participation in the criminal trial exceeded any statutory authority, and that it implicated his constitutional right to due process and a fair trial. Specifically, defendant insists that the trial court erred in permitting the guardian

ad litem to sit at counsel table with the prosecutor, to make objections, and to question witnesses during the trial. The State responds that the role played by the guardian ad litem at trial was nearly trivial, involving only three witnesses, and that the guardian ad litem's questions revealed no new evidence. As a result, the State contends that any error associated with the guardian ad litem's role in the criminal trial is without legal consequence and is therefore harmless.

### A. Standard of Review

¶ 14 The State initially insists that the defendant should be precluded from presenting on appeal issues relating to the guardian ad litem's participation at trial because they were not raised before the trial court. Defendant counters that he objected to the guardian ad litem's questioning of witnesses at the pretrial conference. However, a transcript of the pretrial conference does not exist. In fact, we cannot identify any evidence in the record indicating that defense counsel preserved this issue for appeal by asking the trial court to rule on it. Nevertheless, claims not raised before the trial court may be raised on appeal where, as the defendant argues here, the trial court committed plain error. Consequently, we review the extent of the guardian ad litem's participation for plain error.

¶ 15 To establish the existence of plain error, a defendant must demonstrate that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993).

### B. The Guardian Ad Litem's Erroneous Participation

1. The Role of the Guardian Ad Litem

¶ 16 In order to determine whether the trial court erred in permitting the guardian ad litem during the trial to sit at counsel table, make objections, and question witnesses, we look to the sections of the Utah Code governing the role of the guardian ad litem. At the outset, we note that it is universally accepted that the role of a guardian ad litem is to represent the best interests of those not legally competent to represent themselves, primarily children, and that the Utah Code allows a guardian ad litem to be appointed in a variety of proceedings where a child's well-being or legal interests are directly impacted.[3] That said, the role and extent to which a guardian ad litem may participate in these legal proceedings is controlled by the statutory guidelines under which the guardian ad litem is appointed.

¶ 17 In this criminal case, an attorney[4] guardian ad litem was appointed by the district court pursuant to sections 78–7–9, 78–3a–911, and 78–3a–912 of the Utah Code. *See* Utah Code Ann. §§ 78–7–9, 78–3a–911, 78–3a–912 (Supp.2000). Two of the sections, 78–3a–911 and 78–3a–912, are not part of the criminal code, but are part of the Juvenile Courts Act. Hence, these two sections were promulgated with juvenile procedures and issues in mind and were meant to apply to the juvenile context. Section 78–7–9, however, is not so limited.

**3.** *See, e.g.,* Utah Code Ann. § 30–3–11.2 (1998) (indicating that counsel may be appointed in a matter involving the custody or support of a child); *id.* § 30–6–2(4) (declaring that the court may appoint a guardian ad litem to represent the best interests of a minor in protective proceedings); Utah Code Ann. § 75–1–403(4) & (5) (Supp.2000) (stating that, in probate matters, the court may appoint a guardian ad litem to represent the interests of a minor, incapacitated, or unborn person, and the court may appoint a guardian ad litem to represent several persons or interests and may approve an agreement on behalf of a minor); *id.* § 78–3a–314(5) (stating that in every abuse, neglect, or dependency proceeding under the Juvenile Courts chapter of the Code, the court shall, in accordance with section 78–3a–912, order that a child be represented by a guardian ad litem who shall represent the best interest of the child).

**4.** We note here that the duties and responsibilities of a guardian ad litem are not always coextensive with those of an attorney representing a party in an action. While the term guardian ad litem is often used as a general term to mean attorney guardian ad litem, a guardian ad litem in the general sense need not be an attorney.

¶ 18 On its own motion, the court appointed the Office of the Guardian Ad Litem to represent the interests of A.G. The record does not indicate what motivated the court to do so. The order, in pertinent part, reads:

> In the interest of justice, and *pursuant to U.C.A. § 78–7–9, in accordance with U.C.A. §§ 78–3a–911 and 912*, it is HEREBY ORDERED that the: Office of the Guardian ad Litem, 523 Heritage Blvd., Suite 2, Layton, Utah 84041 is HEREBY APPOINTED to represent the best interests of A.G., the minor alleged victim in this case. The State of Utah is to cooperate in making available to the Office of the Guardian ad Litem all information necessary to protecting and representing A.G.'s interests. Further, the Court grants the Office of the Guardian ad Litem the authority to utilize additional resources available to the Office of the Guardian ad Litem in its representation of A.G.'s interests.

(Emphasis added.)

¶ 19 Although the district court's order appointing a guardian ad litem has not been challenged, we take this opportunity to address the decision to appoint a guardian ad litem in a criminal case. The interplay of sections 78–7–9, 78–3a–911, and 78–3a–912 limits when a guardian ad litem may be appointed and the extent of the guardian ad litem's role.

¶ 20 Under section 78–7–9, the court may appoint a guardian ad litem if "child abuse, child sexual abuse, or neglect is alleged in any proceeding in any state court," and the appointment must also be "in accordance with Sections 78–3a–911 and 78–3a–912" of the Juvenile Court Act. Utah Code Ann. § 78–7–9(1) & (3).

¶ 21 At first glance, by its plain language, the appointment authority of section 78–7–9 appears to limit the appointment of a guardian ad litem to only those cases in which child abuse, child sexual abuse, or neglect is alleged. However, while the terms "child abuse" and "child sexual abuse" are the titles of specific criminal violations, "neglect" is not. *See* Utah Code Ann. § 76–5–109 (Supp.2000) (child abuse); Utah Code Ann. § 76–5–404.1 (1993) (sexual abuse of a child). It appears obvious that in using these terms, the legislature was referring to those terms as used in the Juvenile Court Act and did not require a specific criminal charge by that name to be alleged.

¶ 22 In this case, defendant was charged with one count of rape in violation of section 76–5–402, one count of forcible sexual abuse in violation of section 76–5–404, and two counts of unlawful sexual conduct with a sixteen or seventeen year old, violations of section 76–5–401(2).[5] Because we do not read section 78–7–9 to limit the appointment of a guardian ad litem to only those cases where the specific crimes of child abuse or child sexual abuse have been charged, the district court in this case had the authority to appoint a guardian ad litem. However, as stated above, there is no indication in the record as to what concern motivated the court to do so. Moreover, the role of the guardian ad litem is still circumscribed by the language of sections 78–3a–911 and –912 of the Juvenile Court Act.

¶ 23 We turn now to sections 78–3a–911 and 78–3a–912 to determine how the authority and responsibilities given to the guardian ad litem in the Juvenile Court Act apply in the criminal context. Section 78–3a–911 provides for the creation of the Office of the Guardian Ad Litem Director under the direct supervision of the Judicial Council, the governing body of the state courts. This section enumerates criteria for the hiring and supervision of the director and duties to be performed. Utah Code Ann. § 78–3a–911(2) & (3). The Director's duties encompass development, management, and implementation of selection, training, and supervision procedures for guardians ad litem. *Id.* Section 78–3a–911 contains no grant of authority for a guardian ad litem to participate in any way in a criminal trial, however.

¶ 24 Section 78–3a–912 provides, among other things, for the appointment of a guard-

---

5. The two counts of unlawful sexual conduct with a sixteen or seventeen year old were later dismissed.

ian ad litem and lists the duties and responsibilities of a guardian ad litem. Subsection (1) authorizes the Juvenile Court to "appoint an attorney guardian ad litem to represent the best interest of a minor involved in any case before the [Juvenile] court," and subsection (2) directs the guardian ad litem to represent the best interests of "each minor who may become the subject of a [Juvenile Court] petition alleging abuse, neglect, or dependency," in a case. Utah Code Ann. § 78–3a–912(1) & (2); *see also* § 78–3a–103(1)(g) (Supp.2000) (defining "court" as the Juvenile Court when read in chapter 3a).

¶ 25 Other subsections of section 78–3a–912 address the funding of the guardians ad litem, provide that guardians ad litem are state employees for purposes of indemnification, protect the records of the guardian ad litem from disclosure, and waive some of the restrictions imposed on attorneys in order to facilitate the parens patriae role of the guardian ad litem. *See, e.g.,* Utah Code Ann. § 78–3a–912(6), (7), & (11)(a)-(d). These subsections, although not directly related to the participation of the guardian ad litem in the trial below, suggest the tone and attitude of the legislature in adopting the provisions: Under the supervision of the Judicial Council, a guardian ad litem is an employee of the courts whose role is to protect and act in the best interests of children who are the subjects of abuse, neglect, or dependency.[6]

¶ 26 Subsection (3) of section 78–3a–912 is of more direct concern to our analysis of whether the trial court erred in allowing the guardian ad litem to participate at the level he did in defendant's trial. Subparts (a) through (x) of subsection (3) detail specific duties and responsibilities of the guardians ad litem appointed pursuant to the statute. Only three[7] bear on our inquiry:

(3) Each attorney guardian ad litem shall:

. . . .

(i) file written motions, responses, or objections at all stages of a proceeding when necessary to protect the best interests of a minor;

. . . .

(*l*) personally attend all court hearings, and participate in all telephone conferences with the court unless the court waives that appearance or participation;

. . . .

(*o*) present witnesses and exhibits when necessary to protect the best interest of the minor;

Utah Code Ann. § 78–3a–912. Standing alone, the language of these three subparts would appear to authorize, indeed mandate, the participation of the guardian ad litem in the trial of defendant. However, reading the statute as a whole, giving appropriate consideration to the expressions of purpose and overall scheme of the sections, it becomes clear that no such participation is either intended or authorized.

¶ 27 Section 78–3a–912 describes the duties and responsibilities of the guardian ad litem when appointed to represent the best interests of a child in a proceeding in Juvenile Court. The purpose of such a Juvenile Court proceeding is to alleviate conditions that result in the abuse, neglect, or dependency of the child. The proceedings described relate, without exception, to determining what corrective actions are in the best interests of the child, not what punishment is appropriate for adult perpetrators of actions resulting in abuse, neglect, or dependency. Punishment of the perpetrators, if appropriate, is reserved for the criminal system, not the civil Juvenile Court system. Therefore, the policy behind the guardian ad litem's participation in juvenile proceedings

---

**6.** The terms "child abuse" and "child sexual abuse" used in section 78–7–9 are both included in the broad "abuse" category specified in section 78–3a–912.

**7.** Subpart (p) also requires the attorney guardian ad litem to participate in all appeals unless excused by order of the court. At defendant's trial, the guardian ad litem indicated to the court that he did not plan to appeal, whatever the verdict.

The guardian ad litem neither participates in this appeal, nor has he sought relief of that obligation from the court, actions that would have been required under the guardian ad litem's proffered interpretation of his role in defendant's criminal trial. Clearly, no such participation by the guardian ad litem would be proper, or permitted, in this case, given our holding described hereafter.

does not apply to the same extent in the context of a criminal trial.

### 2. The Guardian Ad Litem's Participation Was Error

¶ 28 If the guardian ad litem were to have a role of any kind in the prosecution of defendant in the case before us, it would be peripheral, and strictly limited to matters relating specifically to the treatment of the child victim, such as assuring that the victim received notice and opportunity to be present and heard as mandated by the victims' rights statutes.[8] Nothing in the statutory authority for the appointment of a guardian ad litem, or the duties and responsibilities of the Office of the Guardian Ad Litem Director or the individual guardians ad litem under its direction, authorizes the guardian ad litem to act as co-prosecutor, as happened here.

¶ 29 Permitting the guardian ad litem to sit at counsel table was error. To permit the guardian ad litem to sit at counsel table in a criminal trial and act like a second prosecutor, wearing the cloak of authority of an employee of the courts, having been appointed by the trial court to the role, dangerously erodes the defendant's presumption of innocence. The guardian ad litem's role does not extend to this degree of "protecting" the interests of the child by assisting in the punishment of the alleged perpetrator of the crime against the child victim. Given the consequences of improper interference in the criminal process, namely reversal or retrial, participation in this criminal trial by the guardian ad litem was of no service to the child, or the court.

¶ 30 Allowing the guardian ad litem to sit at counsel table with the prosecution is inconsistent with the independent nature and role of the guardian ad litem. The interests of a child victim are not always the same as the interests of the parties to a criminal case: the defendant and the State. Consequently, because the victim was not an interested party, her court-appointed representative, the guardian ad litem, should not have been permitted to sit at counsel table, either with the State or with defendant. It was error to allow it.

¶ 31 Permitting the guardian ad litem to question witnesses and make objections was also error. Because a guardian ad litem does not represent an interested party in a criminal trial, the guardian ad litem is not permitted to further the interests of either the State or the defendant in a criminal case. Victims' rights legislation entitles victims to, among other things, be notified of criminal or juvenile justice proceedings, and be present and heard at important hearings. *See, e.g.,* Utah Code Ann. § 77–37–3; Utah Code Ann. §§ 77–38–3 & –4. However, the right to be notified and present at trial does not include the right to be heard during the guilt phase of the proceedings. *See id.* § 77–38–2(5); § 77–38–3; § 77–38–4(1) & (2) (stating that "[the Rights of Crime Victims Act] shall not confer any right to the victim of a crime to be heard: (a) at any criminal trial ... unless called as a witness"). In this case, however, the guardian ad litem insisted that he had the right, on behalf of A.G., to object to questions asked by defense counsel, and on more than one occasion, to ask follow-up questions to those of the prosecutor. To the contrary, the guardian ad litem's participation may not include objecting to questions and questioning witnesses in a criminal trial. The role of the guardian ad litem is not to act as an advocate either for the State's position or for the defendant's position in a criminal trial.

¶ 32 Nothing in the statutes under which a guardian ad litem may be appointed by the district court authorizes the guardian ad litem to sit at counsel table with the prosecutor in the criminal action, to object to questions or proceedings during trial, or to question or call witnesses. As the trial court here correctly concluded, there is also no authority for granting the guardian ad litem's request to make opening and closing statements to the jury in the criminal case. The role of the guardian ad litem in the criminal context involving a child victim is as

8. *See* Utah Code Ann. §§ 77–37–1 to –5, 77–38–1 to –14 (1999).

limited as that enjoyed by the child's parent or other legal guardian.[9]

¶ 33 In sum, the circumstances under which an attorney guardian ad litem is appointed are circumscribed by statute, and the role of an attorney guardian ad litem in the litigation process is also limited because of the nature of the duties and responsibilities set forth by these statutes.[10] Consequently, the trial court's allowance of the guardian ad litem to sit at counsel table with the prosecutor, to make objections, and to examine witnesses, was error.

### C. The Error Should Have Been Obvious to the Trial Court

¶ 34 The second factor under the plain error analysis is whether the error should have been obvious to the trial court. *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). These errors, permitting the guardian ad litem to sit at counsel table, to make objections, and to question witnesses, should have been obvious to the trial court.

¶ 35 In fact, the record indicates that the court was conscious that the guardian ad litem's desired level of participation was inappropriate. On one occasion, in sustaining an objection to questioning of an expert witness by the guardian ad litem, the trial judge said, addressing the guardian ad litem, "You are here as the victim's advocate basically in this case, and there's not going to be two bites of the apple for examination.... [S]o you and [the prosecutor] can coordinate that

together. I'm not going to have two things going from the same side of the case." Following further colloquy with the guardian ad litem, the trial court again said, "I'll tell you what my concern is. My concern is that there shouldn't be any reason that there should be two times prosecution versus one time defense and you and [the prosecutor] can coordinate that." The guardian ad litem responded,

> [Y]our honor, you indicated that we can coordinate with the prosecutor. I can state to the court that by statute[ ] we're supposed to be independent and there are times when we are even in opposition to the prosecutor's position. We do not coordinate as being the same case because we—our job as mandated is to be inside. I think we ought to be given an inside rather than having to be coordinated with the prosecutor or the attorney[s] general[ ].

¶ 36 The trial court did not permit the guardian ad litem to give an opening statement or summation. Indeed, the trial court explained that to permit the guardian ad litem to become too involved at trial would invite error. At the end of trial, in ruling on the guardian ad litem's request to make a closing statement, the trial court correctly described the law, saying: "[T]here's nothing [in] any statute that I know of that allows the guardian ad litem to come in here and basically redo the prosecution. Your statute, 78–3a–912, as far as I can read, does not apply to a first degree criminal rape case." [11]

9. Indeed, in a case such as this, where the child victim is nearly eighteen years old, expresses no need for appointment of a guardian ad litem, and the record suggests no other particular justification for such an appointment, the practice of appointing an attorney guardian ad litem was not only wasteful, but counterproductive in terms of the criminal proceeding.

10. It is this same limited role that applies to the guardian ad litem appointed by the district court in any district court proceeding.

11. In response, the guardian ad litem reiterated his belief in the applicability of the requirements of subsections 78–3a–912 (*l*) and (*o*) to attend all hearings and to present witnesses and exhibits when necessary to protect the best interests of the child. However, he also expressed a degree of uncertainty, saying: "I think if there's a court ruling on it, [in] whichever way, then perhaps we

can[ ] try to have some clarification as to what our role is, because really it is something that we are struggling with with various prosecutors and various courts."

The trial court replied that he was aware of the concern because he had been in attendance at a new judges' orientation at which, as court staff, the Director of the Office of the Guardian Ad Litem spoke and took questions, indicating that the Office took the position that the provisions of section 78–3a–912 authorized the guardians ad litem to participate fully in criminal trials, including opening and closing statements, calling and examining witnesses, and introducing exhibits.

While we do not address the propriety of the training mentioned, we do note with concern the apparent desire and effort of the Office of the Guardian Ad Litem to be both an arm of the court, and an advocate before it, a situation fraught with ethical and legal difficulties.

¶ 37 As a result, the second element of the plain error analysis is satisfied: The error should have been obvious to the trial court.

### D. The Error Was Prejudicial

¶ 38 The third factor under the plain error analysis is whether the defendant was harmed or prejudiced at trial. In other words, absent the error, whether there is a reasonable likelihood of a more favorable outcome for the appellant; or, phrased differently, whether our confidence in the verdict is undermined. *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). We are satisfied that the "team prosecution" appearance presented by allowing the guardian ad litem to sit with the prosecutor, make objections, question witnesses, and generally act as a co-prosecutor and advocate for the conviction of the defendant was prejudicial to defendant under the *Dunn* plain error standard. Our confidence in the verdict of the jury is thereby undermined. As such, the failure of the defendant to object on the record to the participation of the guardian ad litem is not fatal to his appeal. Allowing the guardian ad litem to participate as he did in this case was error. Moreover, it should have been obvious to the trial court, and it was harmful, in that, absent the error, there is a reasonable likelihood of a more favorable outcome for the defendant.

### III. GUARDIAN AD LITEM PARTICIPATION INHERENTLY PREJUDICIAL

¶ 39 In addition to concluding that the trial court committed plain error under our *Dunn* standard by allowing the guardian ad litem to participate as he did in this case, we also conclude that the extent of the guardian ad litem's participation was in violation of the standard set forth in *Holbrook v. Flynn*, 475 U.S. 560, 570, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (stating courts must consider whether a practice presents an unacceptable risk of bringing into play impermissible factors which might erode the presumption of innocence). We agree with defendant that allowing the guardian ad litem, appointed only to protect the interests of A.G. as a child victim, to sit at counsel table with the State, examine witnesses, and make objections, is inherently prejudicial. The practice presents an unacceptable risk of bringing into play impermissible factors which might erode the presumption of innocence to which the defendant is entitled as a matter of constitutional right. The activities of the guardian ad litem in the course of defendant's trial violated defendant's right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and by article 1, section 7 of the Utah Constitution. The trial court erred in allowing it.[12]

### IV. DEFENDANT'S OTHER ASSIGNMENTS OF ERROR

¶ 40 Because our holding with respect to the participation of the guardian ad litem in the trial results in reversal, we need not reach defendant's other assignments of error.

¶ 41 Reversed and remanded.

¶ 42 Chief Justice HOWE and Justice DURHAM concur in Justice WILKINS' opinion.

RUSSON, Associate Chief Justice, concurring:

¶ 43 I concur. I write only to express my concern about the statutory scheme that places the office of the guardian ad litem director within the judicial branch of government under the direct supervision of the Judicial Council, the governing body of the state courts. While the said office is of the utmost importance for the protection and

---

12. We are also mindful that, through no fault of her own, the victim in this case may be required to relive painful events she thought resolved, and face testifying once again. However, where the conduct of the guardian ad litem in this matter appears to be the result of a concerted effort by the Office of the Guardian Ad Litem to participate in criminal trials involving children as victims, and where such a practice would remain unchallenged without appeal by one convicted under such circumstances, we see no alternative to reversing defendant's conviction in this case. Hopefully, to do so now will prevent improper involvement in other trials yet to occur and remove at least one element of doubt from the process by which justice is sought in our courts.

well-being of children, its placement within the judicial branch of government is directly contrary to the role of the judiciary in our society. Its placement should be within the executive branch of government.

¶ 44 Courts must maintain absolute neutrality and be free from bias or prejudice, or even the appearance of such, in the conducting of judicial trials. Indeed, the Code of Judicial Conduct requires judges to "exhibit conduct that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2A.

¶ 45 Furthermore, the said Code requires:

A judge should require staff, court officials and others subject to judicial direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

¶ 46 The purpose of the above requirement is for the establishment and maintenance of public confidence in the judiciary. Every party appearing before a court has an absolute right to feel confident that the court will be impartial and free from bias or prejudice. If a trial judge in a criminal case is allowed to appoint an employee of the courts to act as guardian ad litem and allow such person to actively participate in the trial as an adversary of the defendant and/or cooperate with the prosecutor in prosecuting the defendant, the confidence of the defendant, and consequently the public, in our judicial system is endangered.

¶ 47 Justice DURRANT concurs in Associate Chief Justice RUSSON's concurring opinion.